And we'll turn to Chad Talada v. Cole. Ms. Berger? Good afternoon. May it please the Court. My name is Anne Berger. I represent Chad Talada, Petitioner-Appellant. Chad Talada is presently jailed in connection with a 2009 violation of the Federal Sex Offender Registration Act, SORNA. He's in federal custody in violation of law, and he should be released from further incarceration and supervision because he is actually innocent of this 2009 SORNA violation. Is he under the law as it is understood in West Virginia? No. Can you choose which circuit to go into in order to say that it was error? I would say, Judge Sack, it's not a matter of Mr. Talada judge shopping or forum shopping, but instead, Mr. Talada is seeking one review, one review of his claim that he is actually innocent. It's our contention . . . Didn't he have the ability to do that in West Virginia, but he would have lost? Following the denial of the cert petition on this issue, certainly he could have filed a 2255 motion in that court. However, it's our contention that requiring him to do so would be tantamount to having him engage in a feudal act because it was foreclosed. Correct. And that would run afoul of the purpose even of AEDPA and 2255, which was to reduce the In this particular case, Mr. Talada, although he pursued this very issue through a cert petition, a failed cert petition, he did not file even a single 2255. That would have been futile. It's our contention, obviously, that that results in him being denied effective review of his claim of actual innocence. One of the requirements for 2241 is you'd have to show actual innocence, right? Yes. Shouldn't actual innocence be judged in the place where the crime allegedly occurred? That would be West Virginia. And as you've just told Judge Sack, under the federal law as it was in existence in West Virginia at the time of the alleged crime, the petitioner was guilty, not innocent, in West Virginia. That's correct. And in part, that's what makes Mr. Talada's situation, in our view, tantamount to a manifest injustice. We have six circuit courts of appeals that have already recognized that the attorney general violated the Administrative Procedure Act when he enacted the interim rule without a notice and comment period. Five of those circuits, including U.S. attorneys' offices, district courts, and circuit courts of appeals within five circuits have already decided that individuals standing in Mr. Talada's own shoes are actually innocent. And some of these cases . . . That happens in other cases where there's a conflict in the circuits as to what the elements of an offense are, where something could be an offense in one circuit and not in another circuit. The rule that you're asking us to apply would say you determine actual innocence by the most favorable rule in any circuit in the United States to which the petitioner could, after being released, move and file a 2241. And that is certainly the position taken by U.S. attorneys' offices and district courts in those circuits, which I've cited, where that has been exactly what occurred, where an individual was convicted of a sort of violation under the interim rule in one circuit and through one means or another, whether he was imprisoned in a more favorable circuit or otherwise, where in several cases, I believe I cited them, the parties, including the government and the court, concluded under 2241 that the person was actually innocent. And certainly there's, I think, a visceral reaction about, well, what about law of the case? Because one might say that even though the Gould panel had determined this issue, had analyzed the issue, and the panel in Mr. Talata's appeal summarily denied the issue in his appeal, where's the law of the case? And who should say that a panel of this court should essentially overrule, in the same case, a panel of another court on the same issue? And with respect to the law of the case, panels of this court have concluded that, while generally the law of the case should be honored, that does not rigidly bind a court. And in fact, a panel of this court in the Salerno case has said that courts may relitigate to correct a clear error or to prevent manifest injustice. And I go back to Justice Stevens' concurring decision where he talked about a miscarriage of justice, where an individual is imprisoned for an act that the law does not view as criminal. And there is inherent flexibility in this court's power in dealing with the writ. And that flexibility permits the court to correct this, to correct this miscarriage of justice. And so the lens through which Mr. Talata's relief should be viewed is more in line with trying to avoid a miscarriage of justice than procedural, and I don't want to say quibble, but a procedural argument that misses the point. I would have thought that the place to correct that would be on the petition for cert to the Supreme Court saying there's a conflict in the circuits as to whether this is, in fact, a violation of SORNA. And Judge Kodal, there are two responses to that. I mean, the Supreme Court itself says they're not an error-correcting court. And secondly, in discussions with appellate counsel for Mr. Talata below, informed me that the SG's position in opposition to Mr. Talata's cert petition was this is not an issue that requires the court's attention. The interim rule is no longer in effect, and the individuals who might have been impacted by this and the split, they're few and far between, and they're no longer a cause for the court's concern. And I don't know, obviously, whether that contributed to the court declining cert, but certainly that was something that the SG argued. I see my time is up. Thank you. Good afternoon. May it please the court. My name is Tiffany Lee, and I represent the United States. The reason we're here is because Mr. Talata ended up violating his term of supervised release, and ended up being charged with a subsequent crime within the Western District of New York, which brought his case within the circuit. If he had not done any of these things, then he would stand today as a citizen, as a sex offender who had a previous conviction for violating SORNA. Mr. Talata had the opportunity to test the adequacy and effectiveness of the 2255. He chose not to do so. He chose not to do so because under the Fourth Circuit precedent with which he was convicted, SORNA remained applicable to him, and he had violated that offense. But his decision not to pursue that is not the basis for which relief can be sought in our circuit pursuant to the Savings Clause of 2241. And this court has expressly stated in Jimmian v. Nash that 2255 is not inadequate. It is not ineffective simply because a prisoner cannot meet the ADEPA gatekeeping requirements, provided that the claim was previously available on direct appeal, or in a prior 2255 petition. After he was convicted in the Fourth Circuit, after the Fourth Circuit affirmed his conviction, he had the opportunity to raise before the Fourth Circuit explicitly that there was a circuit split. United States v. Cain had been decided by the Sixth Circuit, which went opposite from United States v. Gould, which had affirmed basically the Attorney General's rulemaking power under the Administrative Procedures Act. Mr. Talata chose not to do that. So he cannot come here now, or he cannot use the circumstance that he is now within the Second Circuit, and ask this court, in essence, to review a determination by a sister circuit. Ultimately, Your Honors, the district court's judgment dismissing Mr. Talata's petition pursuant to 2241 should be affirmed. Unless there are any questions from this court, the government rests on its submissions. Thank you. Ms. Berger? Thank you. I'd like to reiterate a case citation that was included in my opening brief, which includes a quote from Hensley v. Municipal Court, a Supreme Court case from 1973. This is on page 24 of my opening brief. And the quote reads, The writ, quote, must retain the ability to cut through barriers of form and procedural mazes to ensure that miscarriages of justice within its reach are surfaced and corrected, end quote. With respect to the government's arguments, I was struck by the tone of their brief, and even the argument that it seems the government is urging the court, this court, to move closer to a Tenth Circuit standard with respect to the Savings Clause. And the Tenth Circuit, as we've cited, has the strictest, the most limited view, or limited interpretation of inadequate and unavailable, and it's tantamount to there no longer being a courthouse at which to file a petition. That is not from Treastman and Cephas v. Nash and the other decisions from this court. This court has never gone to that extreme, nor should it here. And I'd like to add two final comments. The effect of this conviction on Mr. Tolada's new offense, for which he is pending sentencing, is to increase his guidelines range by 65 to 78 months. The simple fact of the existence of this conviction. He also faces up to two years in prison alone on the violation. Increase by 65 to 78? Eight months. From 65 to 78. No, no, no. The guidelines range, which would have begun at 262 months at the low end, is elevated simply because of the existence of this SORNA conviction by 65 months at the low end and 78 months at the high end. That much higher. Correct. Simply because of this conviction. And finally, obviously there was the Gundy case that I believe was to be argued this morning before the Supreme Court. Gundy dealt with the non-delegation portion of the various challenges to SORNA over the years. I believe that my adversary is in agreement with me that regardless of how that case is determined, that would not moot the issues in Mr. Tolada's appeal. Ms. Berger, let me ask you finally, if you could just give us a timeline, beginning with the proceedings in West Virginia, just tell us how we got here. Certainly. Step by step. Just not the details of the decisions, but rather the dispositions along the way. Certainly. So what happened? First, we have a SORNA conviction, right? That's correct. We have a SORNA conviction based on travel that occurs in 2007 during the time that the interim rule is purportedly in effect. And that conviction was before what? By what court? By the Southern District of West Virginia District Court. The challenge was raised there, denied. There was a conditional plea agreement struck that allowed Mr. Tolada to reserve the right to appeal this issue. Shortly before, I believe, sentencing in that matter in the district court, Gould came down on the Fourth Circuit. Nevertheless, Mr. Tolada was sentenced and he pursued a direct appeal to the Fourth Circuit, raising several issues, including this issue. What happened? This issue was summarily denied without analysis. This issue being? The Administrative Procedure Act challenge to the enactment of the interim rule without notice and comment. Making it retroactive? The Fourth Circuit had already. What is the alleged APA violation? When an agency is enacting substantive. Oh, I know. Yes, but the Attorney General did what? Enacted the interim rule with no notice and comment, criminalizing and applying SORNA to a population of people whose sex offense convictions predated the 2006 enactment of SORNA. Right. Then what happened? The Fourth Circuit summarily denied the APA challenge. That issue was decided on the merits by the Fourth Circuit. I would respectfully disagree, given that it had been foreclosed by Gould prior to Mr. Tolada's direct appeal. Your view is that it wasn't decided at all? It was decided summarily and it would not constitute adequate or effective review of this issue. We've gone through this many years ago. Summary dispositions are dispositions. They are no less and no more than dispositions which involve an opinion. And it's certainly accurate to say that still within the Fourth Circuit, Mr. Tolada is guilty of a SORNA violation because the law there has not changed. Next. Subsequent to the denial of the direct appeal, a cert petition was filed and was denied. Next step. Mr. Tolada's supervised release in early 2010 was. Now moves to the Western District of New York. That's correct. And for a time is out of custody being supervised in the Western District of New York. He has several supervised release violations that result in him being detained. One of them occurs at a time when Reynolds is decided by the Supreme Court. I believe he's finishing up an eight-month term of imprisonment for a violation of supervised release out of the Western District for this offense. And Reynolds, the court will recall, didn't change the footing of the Gould courts. What happened with, what is it that the Western District did? What disposition or judgment did the Western District enter with respect to a violation of supervised release? A series of them. One of them, the first was, I believe, eight months imprisonment with a further term of supervised release. The second one, I believe, was a term of six months imprisonment, a further term of supervised release. Hold it right there. Yes. Were those judgments of the Western District of New York appealed? None. They were not. Correct. Why? I don't know. You were not involved. I was not involved in those earlier. Correct. All right. So those judgments are entered and fully, and does he serve his required time? Correct. And he's re-released with a new term of supervised release in each case. And then he comes within the scope of my representation when he is charged with not only violating that same term of supervised release, but also a new offense for which he pleads guilty and is pending sentencing in conjecture with a child pornography offense. And now you wish, you want us to review essentially whatever it is that was effectively decided by the Fourth Circuit. I'm asking this panel to provide one-shot review for Mr. Talata on this issue. This isn't as if Mr. Talata is in a favorable circuit. We're not going into the details. I'm just trying to get an understanding of your position. You are asking us to re-evaluate or evaluate an issue which has heretofore been presented to the Fourth Circuit, right? Yes. Thank you. Thanks very much. We'll reserve the decision. We appreciate your travels from furthest Rochester. Thank you. With which one member of the panel has some familiarity. Thank you.